Joel B. Robbins, Esq. (011065)
Anne E. Findling, Esq. (010871)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: 602/285-0100
Fax: 602/265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Donald Rose**, individually, as the personal representative of the Estate of Michael Daryle Rose, deceased, and on behalf of the statutory beneficiaries of Michael Daryle Rose; <br> **Virginia Rose**, individually, <br><br>　　　　　　　　Plaintiffs, <br><br>　　vs. <br><br> **William B. Pribil**, in his individual and official capacity as Sheriff of Coconino County; <br> **Cameron Stoppe**, in his individual capacity as a Coconino County Sheriff's Office detention officer; <br> **Joseph Ellis**, in his individual capacity as a Coconino County Sheriff's Office detention officer; and <br> **Tyler Romney**, in his individual capacity as a Coconino County Sheriff's Office detention officer, <br><br>　　　　　　　　Defendants. | No. _____ <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

For their Complaint against Defendants, Plaintiffs Donald Rose and Virginia Rose allege as follows:

**PARTIES**

1. Michael Daryle Rose passed away on October 3, 2014, while in the custody of the Coconino County Sheriff's Office. He was forty-eight (48) years old at the time of his death.

2. Plaintiff Estate of Michael Daryle Rose is a legal entity organized under the probate laws of the State of Arizona. Plaintiff Donald Rose is the personal representative of the Estate.

3. Donald Rose is also the father of Michael Daryle Rose. He brings this matter on behalf of the Estate, on behalf of the statutory beneficiaries of Michael Daryle Rose, and on his own behalf.

4. Virginia Rose is the mother of Michael Daryle Rose. She brings this matter on her own behalf.

5. Defendant Sheriff William B. Pribil is the duly elected sheriff of Coconino County, Arizona, and is named in his individual and official capacity, as such terms are used within the jurisprudence of 42 U.S.C. § 1983.

6. Defendant Pribil is a state actor and is the final policymaker for the Coconino County Sheriff's Office ("CCSO") and is permitted to exercise his authority as Sheriff through the use of deputies and detention officers.

7. Defendant Pribil is responsible for the acts and omissions of Coconino County Sheriff's Office employees under the doctrine of *respondeat superior*.

8. Defendant Cameron Stoppe is a detention officer with the Coconino County Sheriff's Office who, at all times relevant to this Complaint, was acting under the color of law.

9. Defendant Joseph Ellis is a detention officer with the Coconino County Sheriff's Office who, at all times relevant to this Complaint, was acting under the color of law.

10. Defendant Tyler Romney is a detention officer with the Coconino County Sheriff's Office who, at all times relevant to this Complaint, was acting under the color of law.

11. The individual defendants are state actors as that term is used in the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983. They were acting at all times under color of state law. They are named individually and in their respective capacities as employees of their respective agencies.

## JURISDICTION AND VENUE

12. The events that form the basis of Plaintiff's Complaint occurred in Coconino County, State of Arizona. All defendants currently reside or work, or resided or worked at relevant times, within the State of Arizona. Thus, venue is proper in the District Court of Arizona pursuant to U.S.C. § 1391(b).

13. This action arises under the Constitution of the United States, particularly the Fourth, Eighth, and Fourteenth Amendments, and under the laws of the United States, particularly the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14. This Court has jurisdiction over Plaintiffs' federal civil rights claim pursuant to 28 U.S.C. §§ 1331, 1343, and 144.

15. This Court has supplemental jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

## FACTUAL BACKGROUND

16. In the late evening of October 2, 2014, a disoriented Michael called 9-1-1 asking that the dispatcher send him a cab. Shortly thereafter, he asked for an ambulance because he had fallen.

17. Once paramedics arrived, they encountered Michael, who was suffering from paranoia and delusions. Michael stated that he did not feel well and that he wanted to go to the hospital for "heat stroke." Michael informed the paramedics that he had a history of paranoia, which was clearly evident to the paramedics.

18. After spending a considerable amount of time attempting to persuade

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1 Michael to get into the ambulance for assessment, the paramedics called the Flagstaff
2 Police Department for assistance.

19. As did the paramedics, Flagstaff Police Officers observed Michael to be "skittish, and was constantly looking around." Officers reported that Michael stated that he was "hearing things behind his person" and "clearly showed an altered mental state of paranoia."

20. After interacting with officers and paramedics for approximately one hour, Flagstaff officers arrested Michael for aggravated assault and transported him to the Coconino County Detention Facility.

21. The booking police officers advised the Coconino County Detention Facility intake officers of the circumstances of Michael's arrest, including his self-evident mental health issues.

22. Several minutes later, at approximately 12:15 a.m., Coconino County Sheriff Officers Stoppe, Ellis, and Romney escorted Michael into Intake Cell #7. They placed Michael on his stomach, while in a hobble restraint (placed on him by Flagstaff Police), in order for the detention officers to conduct a search.

23. The officers held Michael's arms and legs and Officer Ellis positioned himself on Michael's upper back, with his right leg near or on Michael's head/neck.

24. Several times, Michael asked for help and to be seen by a nurse.

25. He said that he couldn't breathe; however, an officer told Michael: "If you can talk, you can breathe."

26. At one point, a jail supervisor ordered the officers to "get off his neck."

27. By then, Michael's demeanor changed. He quit moving and began to moan.

28. The officers moved Michael's face away from the cell's drain, at which point Michael was heard mumbling incoherently. Within seconds of moving him away from the drain, Michael began gasping. His back rose and fell dramatically.

29. Defendant detention officers finally realized that Michael was not breathing and had no pulse.

30. The officers began CPR and called for paramedics.

31. It took minutes, however, for the officers to retrieve the jail's automated external defibrillator ("AED").

32. The officers' efforts, including their delayed use of the AED, proved unsuccessful, as did the subsequent life-saving efforts of paramedics. Michael was pronounced dead at the scene at 12:58 a.m.

## CLAIM FOR RELIEF

### Count One
### 42 U.S.C. § 1983
### Civil Rights Act of 1871

33. The foregoing paragraphs are incorporated as though fully set forth herein.

34. The Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids a state actor from being deliberately indifferent to the safety and security of a pretrial detainee.

35. The Fourth Amendment forbids a state actor from using unreasonable force.

36. Defendants Stoppe, Ellis, and Romney violated Michael Daryle Rose's Fourth Amendment rights through the unreasonable use of force to restrain Mr. Rose, particularly after Mr. Rose complained that he was unable to breathe. The officers' continued forceful efforts to restrain Mr. Rose, as he was dying, reflects deliberate indifference to Mr. Rose's health and safety.

37. Defendant Pribil, in his individual capacity was deliberately indifferent in failing to supervise and train jail officers in the appropriate, lawful, and constitutional policies and procedures for restraining inmates.

38. As a result of Defendants' breach of the Fourth and Fourteenth Amendment as described herein, Michael Daryle Rose suffered emotional distress, terror, and extreme pain before his death. As a further result of Defendants' unreasonable use of force and deliberate indifference, Michael Daryle Rose died.

39. Plaintiffs Donald Rose and Virginia Rose are entitled to recover for the loss of their son pursuant to the Civil Rights Act of 1871 for the constitutional injuries to Michael Daryle Rose.

40. In addition, the conduct of the Individual Defendants as described herein breached Donald Rose's and Virginia Rose's constitutional right of familial association.

41. In doing the acts and making the omissions alleged herein, the Individual Defendants acted maliciously and with a wanton disregard for the rights, needs, and feelings of Michael Daryle Rose, and by reason thereof, Plaintiffs are entitled to an award of exemplary damages accordingly.

**Count Two**
**Negligence**

42. The foregoing paragraphs are incorporated as though fully set forth herein.

43. Defendants owed a non-delegable duty for the care, custody, and control of pretrial detainees within the Coconino County Jail System.

44. Defendants breached this duty of care by using unreasonable force to restrain Michael Daryle Rose, particularly after he informed the officers that he could not breathe, and by delaying in providing Michael Daryle Rose with appropriate life-saving care after it was evident that he was dying.

45. In addition, a supervisor observed the three detention officers in their interaction with Michael Daryle Rose, who negligently failed to intervene to prevent the fatal injuries to Mr. Rose.

46. As a result of the negligence of Defendants, Michael Daryle Rose died, resulting in harms and losses to the Plaintiffs.

**Count Three**
**Wrongful Death**

47. The foregoing paragraphs are incorporated as though fully set forth herein.

48. This claim for relief is asserted against Defendants by Plaintiff Donald Rose individually and on behalf of the statutory beneficiaries of Michael Daryle Rose.

49. Pursuant to A.R.S. § 12-611, *et seq.,* liability for wrongful death exists if a person's death is caused by "wrongful act, neglect or default." In this matter, Defendants' "wrongful act, neglect, or default" includes negligence and gross negligence as alleged in this Complaint.

50. As a result of Michael Daryle Rose's wrongful death caused by Defendants, Donald Rose and the statutory beneficiaries of Michael Daryle Rose suffered loss of love, affection, and companionship, for which they are entitled to recovery under Arizona's wrongful death act.

51. As a result of Defendant's wrongful acts, Donald Rose and the statutory beneficiaries of Michael Daryle Rose suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering in the past, present, and future, for which they are entitled to recovery under Arizona's wrongful death act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For special damages, including but not limited to funeral and burial expenses;

B. For other general damages, including but not limited to pre-death pain and suffering, emotional distress and grief, loss of enjoyment of life, and wrongful death;

C. For consequential emotional damage to the surviving statutory beneficiaries;

D. For exemplary damages to the extent permitted by law;

E. For taxable costs and pre- and post-judgment interest to the extent permitted by law;

F. For attorney's fees pursuant to 42 U.S.C. § 1988; and

G. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all issues in this matter triable to a jury.

RESPECTFULLY SUBMITTED: August 21, 2015.

**ROBBINS & CURTIN, p.l.l.c.**

By: /s/ Joel B. Robbins
Joel B. Robbins
Anne E. Findling
301 E. Bethany Home Road
Suite B-100
Phoenix, Arizona 85012
*Attorneys for Plaintiffs*